# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

| | |
|---|---|
| In re: | ) |
|     Shai Shawn Tamir, | )    Chapter 11 |
| | )    Case No. 14-20368 |
|             Debtor | ) |

## MEMORANDUM OF DECISION[1]

Shai Shawn Tamir commenced this chapter 11 case on May 18, 2014. Among his assets are several apartment buildings in and around Portland, Maine. According to schedule D (creditors holding secured claims) of the schedules of assets and liabilities filed by Mr. Tamir in support of his bankruptcy petition, each of Bank of America ("BofA"), HSBC Bank ("HSBC"), and Citibank ("Citi"), is a creditor whose claim is secured by a mortgage on one of Mr. Tamir's properties. Mr. Tamir listed the banks' claims on schedule D as disputed. In due course, each bank filed a proof of claim asserting a secured claim against Mr. Tamir.[2] On February 26, 2015, Mr. Tamir filed an omnibus objection to the claims. The basis for the objection is the Maine Law Court's holding in the case of <u>Bank of America v. Greenleaf</u>, 96 A. 3d 700 (Me. 2014) that under Maine law an assignee of a mortgage from Mortgage Electronic Registration Systems, Inc. ("MERS") lacks standing to foreclose the mortgage. Each of the three bank creditors in this case holds its mortgage by assignment from MERS.

---

1 This memorandum contains my findings of fact and conclusions of law pursuant to F. R. Bankr. P. 7052.

2 As reflected on the claims register maintained by the court, Bank of America filed Claim #9, HSBC Bank filed Claim # 14 and Citibank filed Claim #15.

A hearing on the objection to claims took place on May 15, 2015. At the conclusion of that hearing, I disallowed the three banks' claims, but afforded them 30 days to file amended proofs of claim which contained documentation addressing the Greenleaf issue. Within that time frame, rather than filing amended proofs of claim, each bank filed supplemental documents in support of its original claim. HSBC and Citi also moved for a two-week extension, until June 30, 2015, to file additional material in support of their claims, which material they did file while the motion was pending. Mr. Tamir responded to the banks' supplemental filings by continuing to press the Greenleaf issue as a basis for disallowance. He also opposed the motion of HSBC and Citi for the two-week extension.

A further hearing on this matter took place on July 1, 2015. At the hearing I raised with the banks' counsel their clients' failure to file amended proofs of claim in accordance with my May 15th order. While acknowledging their clients' failure to comply with the letter of my May 15th order, counsel requested that I treat their supplemental filings as the equivalent of amended proofs of claim. Mr. Tamir's counsel opposed the banks' request but also argued that even if it was granted the supplemental material did not establish the banks' secured status under Maine law in light of the Greenleaf decision.

After taking the matter under advisement, I now conclude that the

supplemental filings by the three lenders, when viewed in conjunction with their original proofs of claim, constitute amended proofs of claim within the meaning of my May 15, 2015 order.  See Juniper Dev. Group v. Kahn (In re Hemingway Transp, Inc.), 954 F.2d 1, 10 (1st Cir. 1992) ("The equitable determination to allow or disallow an amendment to a proof of claim timely filed is entrusted to the sound discretion of the bankruptcy court."); Gens v. Resolution Trust Corp., 112 F.3d 569, 575 (1st Cir. 1997)("Leave to amend a POC should be 'freely given when justice so requires.'" citing Fed. R. Bankr. P. 7015).   Also, it is appropriate to grant HSBC and Citi's motion for a two-week extension to file additional documents (which in fact have been filed).   Finally, as to the merits of Mr. Tamir's claim objection, I conclude that the objection should be overruled and the amended proofs of claim allowed as secured claims in the amounts set forth therein.   My reasons follow.

    Mr. Tamir does not dispute that the three banks hold claims against him in the amounts set forth on their respective proofs of claim.   In other words, Mr. Tamir concedes that the three lenders hold the promissory notes which entitle them to assert monetary claims against him.   Mr. Tamir's argument is that based on Greenleaf, because the three lenders hold their mortgages by assignment from MERS, they do not have standing to foreclose and thus they are nothing more than unsecured creditors.

In Greenleaf, Scott Greenleaf signed a note in favor of Residential Mortgage Services, Inc. ("RMS").  His note obligation was secured by a mortgage granted by Scott and his wife, Kristina, on their home.  The mortgage identified RMS as the lender and MERS as the "nominee" for the lender.  When default ensued, Bank of America, which had obtained the mortgage by assignment from MERS, sought to foreclose.  The Law Court ruled that while the note, being a negotiable instrument, was properly held by Bank of America, the mortgage, which was not negotiable, gave MERS "only the right to record the mortgage as the lender's nominee, and having only that right, MERS [did] not qualify as a mortgagee pursuant to our foreclosure statute."  Greenleaf, 96 A.3d at 707(quoting Mort. Elec. Registration Sys. Inc. v. Saunders, 2010 ME 79).  Distilled to its essence, Greenleaf holds that with respect to a mortgage which restricts MERS' role as nominee for the lender to the ministerial act of recording the mortgage, an assignee of that mortgage from MERS lacks standing under Maine law to foreclose the mortgage.

The Greenleaf decision focuses only on a mortgagee's standing to foreclose a mortgage of real property in Maine.  It does not address the validity of the noteholder's security interest in the mortgaged real estate.  In fact, the Law Court acknowledged that Bank of America held a "priority interest" in the Greenleafs' property.  Greenleaf, 96 A.3d at 711.  It is clear from the context of the Law

Court's opinion that priority interest means a priority security interest.

The fact that Mr. Tamir's three lenders may not have standing to foreclose their mortgages on his properties is not a basis for determining the validity of their secured claims in this chapter 11 case. See Vienna Park Properties v. United Postal Savings Assoc., 976 F.2d 106 at 113 (2d Cir. 1992) ("An inquiry into the present enforceability of a security interest is not relevant to whether that interest exists as an initial matter"). See also In re Phillips, 491 B.R. 255, 274 (Bankr. D. Nev. 2013) ("Phillips leaps from the flawed premise that the purportedly defective Assignment defeats Seterus's standing to foreclose to the conclusion that the Note is 'unenforceable against the Debtor and the Debtor's property.' . . . . This is incorrect.").

Reorganization is the antithesis of liquidation. If Mr. Tamir can successfully reorganize, the lenders may never need to foreclose so why should their standing to do so be a relevant factor in determining their status as secured creditors? More to the point, Maine subscribes to the title theory of mortgages. See Saunders, 2010 ME 79, 2 A.3d 289, 294. "[A] mortgage is a conditional conveyance vesting legal title to the property in the mortgagee, with the mortgagor retaining the equitable right of redemption and the right to possession." Id. As a result, a promissory note and the mortgage securing the borrower's obligations thereunder need not be held by the same entity. See Jordon v. Cheney, 74 ME

359, 361 (Me. 1883); Beck v. Federal Nat. Mort. Ass'n, 2013 WL 3883846 at 8 (D. Me. 2013) (applying Maine law).   But whoever holds title to the mortgage does so on behalf of the noteholder who retains the beneficial ownership of the mortgage.   Jordon, 74 ME at 361; U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 653, 941 N.E.2d 40, 54 (2011)(applying the law of Massachusetts, another title theory state).

   Mr. Tamir maintains that while BofA, HSBC and Citi each holds a note secured by a mortgage on one of his properties, none happens to be the holder of such mortgage and this disqualifies each of them from secured status. Bankruptcy Code sec. 506(a)(1) states that a secured claim is "an allowed claim of a creditor secured by a lien" on estate property to the extent of the creditor's interest in the property. Sec. 101(37) defines "lien" as "a charge against an interest in property to secure payment of a debt or performance of an obligation." Here, Mr. Tamir's note obligation to each bank is secured by a mortgage on property of Mr. Tamir's bankruptcy estate. Hence each bank's claim is a secured claim. See Vienna Park, 976 F.2d at 113.    This conclusion is buttressed by the aforementioned principle of Maine law.   Regardless of who may be the *legal* owner of the mortgages on Mr. Tamir's properties, each bank is a *beneficial* owner of the mortgage securing its note.   For purposes of asserting a secured claim in a borrower's bankruptcy case a noteholder's beneficial ownership of the mortgage is

sufficient to establish secured status.

Mr. Tamir's objection to the amended claims of BofA, HSBC and Citi will be overruled and the claims will be allowed. Separate orders consistent with this memorandum shall enter immediately.

Entered at Portland, Maine on this 10th day of August, 2015.

_____
Melvin S. Hoffman
U. S. Bankruptcy Judge