UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:                                        )
    Shai Shawn Tamir,                  )    Chapter 11
                                       )    Case No. 14-20368
            Debtor.                    )

## MEMORANDUM OF DECISION ON PLAN CONFIRMATION

Shai Shawn Tamir, the debtor in this chapter 11 case, owns five properties in Portland and Cape Elizabeth which he rents out.[1] Mr. Tamir proposes in his Second Amended Plan of Reorganization Dated October 21, 2016 to retain and operate all five properties and to make monthly mortgage payments to the holders of mortgages on three of them -- Spring Street, State Street #1 and State Street #2. With respect to the two remaining rental properties, Bramhall Street and Crescent View, the plan offers no payments to the mortgage holders, HSBC Bank USA, N.A. as Trustee and Citibank, N.A. as Trustee, respectively, but rather provides that they are free to exercise their state law rights with respect to the properties, including foreclosing their mortgages. The plan provides that until foreclosure occurs, Mr. Tamir may use the rents generated from Bramhall Street and Crescent View to operate his business, pay his living expenses or fund his plan payment obligations.

Not surprisingly, HSBC and Citibank vociferously object to confirmation of Mr. Tamir's plan. They maintain that he may not retain Bramhall Street and Crescent View and use their rental cash flow willy-nilly to pay anyone and everyone but them. Mr. Tamir parries. The plan, he asserts, leaves HSBC and Citibank unimpaired and without standing to object because they have obtained relief from the automatic stay provisions of the Bankruptcy Code[2] and are free to exercise their state law rights, including foreclosing their mortgages on the two properties. Left unstated in the plan but

---

[1] The properties are as follows: 52 Bramhall Street, Portland ("Bramhall Street"); 254 Spring Street, Portland ("Spring Street"); 52 State Street #1, Portland ("State Street #1"), 52 State Street #2, Portland ("State Street #2), and 1 Crescent View Avenue, Cape Elizabeth ("Crescent View").
[2] References to the Bankruptcy Code and Code are to 11 U.S.C § 101 et seq.

readily acknowledged by Mr. Tamir is that his plan's invitation to HSBC and Citibank to come get their real estate collateral cannot be acted upon as both lenders are prevented from foreclosing as a result of the decision of the Maine Supreme Judicial Court in *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700 (Me. 2014).[3] While both lenders are attempting to resolve their "Greenleaf problems", until they do, Mr. Tamir proposes to operate Bramhall Street and Crescent View, collect rents and pay bills (just not those of HSBC and Citibank) and use excess cash to fund his plan.

After considering the evidence presented at a hearing on confirmation of Mr. Tamir's plan and the parties' pre and post-hearing oral and written submissions, I conclude that the plan is not confirmable because it impairs HSBC and Citibank and treats the claims of these objecting creditors in a manner that is not fair and equitable within the requirements of Bankruptcy Code § 1129(b)(2)(A).

The plan is based on the presumption that because HSBC and Citibank have been liberated from the restrictions of bankruptcy by virtue of obtaining relief from the automatic stay provisions of the Code and are thereby free to recover and liquidate their collateral and to participate in the plan as unsecured creditors for any deficiencies after liquidation, they have received all the benefits to which they are entitled in this chapter 11 case. The fact that these creditors are currently, and possibly for the foreseeable future, disabled by Maine law from proceeding to exercise their foreclosure rights is not, maintains Mr. Tamir, a problem that his plan must recognize or remedy.

Mr. Tamir's analysis is flawed because he conflates the creditors' mortgage foreclosure rights with their rights to rents generated by their collateral. In the HSBC and Citi mortgages, which are for all relevant purposes identical, Mr. Tamir as borrower granted and conveyed with mortgage covenants Bramhall Street and Crescent View, respectively, to Mortgage Electronic Registration

---

[3] For a detailed discussion of the impact of *Greenleaf* on the claims of HSBC and Citibank see my prior decision in this case and the decision of the district court on appeal. *In re Tamir*, 535 B.R. 465 (Bankr. D. Me. 2015), *aff'd*, 566 B.R. 278 (D. Me. 2016) ("*Tamir I*").

2

Systems, Inc. ("MERS") as the nominee of the original lenders who were the predecessors of HSBC and Citibank. He also "absolutely and unconditionally" assigned to the lenders—not MERS—all rents and revenues generated by the real estate. Thus, while the mortgage foreclosure rights of HSBC and Citibank flowed through MERS, their rights to rents and profits exist by an independent grant directly from Mr. Tamir.

*Greenleaf* impedes the ability of a bank to foreclose a mortgage assigned to it by MERS because according to the Maine Law Court MERS neither qualifies as a mortgagee with power to foreclose under Maine law nor has the contractual authority to assign a mortgage to a third party. But as is the case in all standard MERS mortgages, including the two involved here, MERS had nothing to do with the entirely separate rent assignment provisions of the mortgages which run directly between the borrower and lenders.

As soon as HSBC and Citibank acquired the promissory notes executed by Mr. Tamir they acquired the lenders' equitable interest in the mortgages under Maine law, regardless of who held the legal interests. As noted in *Tamir I*:

> Maine subscribes to the title theory of mortgages. *See Saunders*, 2010 ME 79, 2 A.3d 289, 294. "[A] mortgage is a conditional conveyance vesting legal title to the property in the mortgagee, with the mortgagor retaining the equitable right of redemption and the right to possession." *Id.* As a result, a promissory note and the mortgage securing the borrower's obligations thereunder need not be held by the same entity. *See Jordan v. Cheney*, 74 Me. 359, 361 (Me. 1883); *Beck v. Federal Nat. Mort. Ass'n*, 2013 WL 3883846 at *8 (D. Me. 2013) (applying Maine law). But whoever holds title to the mortgage does so on behalf of the noteholder who retains the beneficial ownership of the mortgage. *Jordan*, 74 Me. at 361; *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 653, 941 N.E.2d 40, 54 (2011)(applying the law of Massachusetts, another title theory state).

535 B.R. at 467-68.

What follows from these venerable principles is that even if MERS continued to hold legal title to the mortgages on Bramhall Street and Crescent View, as soon as HSBC and Citibank became the beneficial owners of those mortgages upon taking assignments of the accompanying promissory

notes, they succeeded to the rights of the lenders to enforce the rent assignment provisions of those mortgages.

Moreover, under Maine law, the ability of HSBC and Citibank to collect rents under the rent assignment provisions of their respective mortgages is not conditioned upon their foreclosing or otherwise taking possession of the real estate. Creditors are permitted under Maine law to seek to collect rents under an assignment of rents provision in a mortgage without obtaining a foreclosure judgment. *See Fleet Bank of Maine v. Zimmelman*, 575 A.2d 731 (Me. 1990); *U.S. Bank Nat'l Assoc. V. SRA Augusta SPE, LLC*, 2016 WL 6808132 (D. Me. 2016). A collateral assignment of rents is enforceable and effective without possession of the realty. *In re Somero*, 122 B.R. 634 (Bankr. D. Me. 1991). In *Somero*, Judge Goodman noted that under Maine law when a mortgage is silent as to the mortgagee's rights to rents and profits, those rights can derive only as an incident to foreclosure. When the mortgage contains an explicit rent assignment provision, however, that provision controls because ". . . Maine law allows the parties to a mortgage agreement to modify entitlement to rents and profits without possession or appointment of a receiver." *Somero*, 122 B.R. at 638. *See also, Fleet Bank of Maine*, 575 A.2d at 734 (upholding the validity of assignments of rents provisions and stating that courts should not rewrite arms-length agreements negotiated by knowledgeable business people). Thus, the ability of HSBC and Citibank to enforce their rights to collect rents is not dependent upon their ability (or inability due to *Greenleaf*) to foreclose on the Bramhall Street and Crescent View properties.

Having obtained stay relief in this case, HSBC and Citibank are free to exercise their contractual rights to collect rents. Furthermore, those rents constitute cash collateral within the meaning of Bankruptcy Code § 363(a) and Mr. Tamir may use those rents only with the consent of HSBC and Citibank or by court order. Mr. Tamir has never sought authority from the court to use cash collateral in this case. By their silence on the matter prior to objecting to Mr. Tamir's plan, HSBC and Citibank could arguably be deemed to have acquiesced to Mr. Tamir's use of their cash

collateral. But now it is clear that Mr. Tamir no longer has the consent of HSBC or Citibank and may no longer use the rents generated from the Bramhall Street and Crescent View properties.

Since Mr. Tamir's plan proposes to use the rent generated by Bramhall Street and Crescent View, it impairs the rights of HSBC and Citibank, holders of security interests in those rents. Furthermore, the treatment accorded these creditors in the plan which can be summarized as "you are free to take your real estate collateral but until you do I'll keep using your rental income collateral to fund my reorganization," is not fair and equitable under Bankruptcy Code § 1129(b)(2).

As Mr. Tamir no longer has authority to use cash collateral generated by Bramhall Street and Crescent View, his plan in its current iteration is not confirmable. I will grant Mr. Tamir 30 days to file an amended plan which provides either no impairment to the rights of HSBC and Citibank or for their fair and equitable treatment. Should such a plan be filed the court will schedule a further confirmation hearing to give Mr. Tamir the opportunity to establish by credible evidence the feasibility of the plan in light of the loss of the rental income from Bramhall Street and Crescent View.

A separate order consistent with this memorandum shall issue.

Dated: June 27, 2017      /s/  _____
Melvin S. Hoffman
United States Bankruptcy Judge