## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **SHAI SHAWN TAMIR,** | ) | **Case No. 14-20368** |
| | ) | |
| Debtor. | ) | |

### _DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION_
### _DATED JULY 27, 2017_

The above-captioned debtor, Shai Shawn Tamir (the "<u>Debtor</u>" or "<u>Tamir</u>"), proposes this Third Amended Plan of Reorganization dated October 21, 2016 (the "<u>Third Amended Plan</u>") pursuant to 11 U.S.C § 1121 of the Bankruptcy Code.  This Amended Plan supersedes and replaces the Debtor's First Plan of Reorganization Dated November 18, 2014, his Amended Plan of Reorganization dated August 5, 2016, and his Second Amended Plan of Reorganization dated October 21, 2016.

## INTRODUCTION

On May 18, 2014 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby initiating the Chapter 11 case of the Debtor.  As a result of the filing, the Debtor became a debtor-in-possession with authority to operate his business pursuant to §§ 1107 and 1108 of the Code.

The Debtor is an individual residing Portland, Maine with his two young daughters.  He is the owner of five (5) income-producing properties, four (4) in Portland and one (1) in Cape Elizabeth.  Those properties are as follows:

A.    3-unit apartment building at 52 Bramhall Street, Portland, Maine ("<u>Bramhall Street</u>");

B.    4-unit apartment building at 254 Spring Street, Portland, Maine ("<u>Spring Street</u>");

C.    Condominium unit located at 52 State Street #1, Portland, Maine ("<u>State Street #1</u>");

D.    Condominium unit located at 52 State Street #2, Portland, Maine ("<u>State Street #2</u>"); and

E.    3-unit apartment building at 1 Crescent View Avenue, Cape Elizabeth, Maine ("<u>Crescent View</u>").

This Third Amended Plan provides for the settlement and satisfaction by the Debtor of all Classes of Claims identified in the Third Amended Plan in the amounts and over the timeframes set forth herein.  The Third Amended Plan also describes the means by which the Debtor intends to satisfy his obligations under the same.  Reference is made to the provisions of the Articles of this Third Amended Plan below for a more detailed statement of the terms of settlement and satisfaction of all Classes of Claims, and the means for doing so.

The Debtor believes that the Third Amended Plan provides for the fair and equitable treatment of all creditor Claims and that the Third Amended Plan is in the best interest of all creditors, and other parties-in-interest.

## *ARTICLE I – DEFINITIONS*

General.  Unless the context otherwise requires and/or unless defined elsewhere in the Third Amended Plan, the following terms shall have the following meanings when used in initially capitalized form in this Third Amended Plan.  Such meanings shall be equally applicable to both the singular and plural forms of such terms.  Any term used in initially capitalized form in this Third Amended Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

1.1     Administrative Claim shall mean a Claim arising and allowable under § 503(b) of the Bankruptcy Code with respect to the Debtor, including charges against the Debtor's estate under 28 U.S.C. § 1930.

1.2     Allowed with respect to a Claim or Interest other than a Fee Claim, shall mean any Claim or Interest (a) that is the subject of a timely filed proof of claim, or (b) any Claim or Interest that has been listed in the schedules filed with the Bankruptcy Court by the Debtor pursuant to Bankruptcy Code § 521 and is not listed therein as disputed, unliquidated, or contingent; and, in each such case as to which either (i) no objection to the allowance thereof or other similar pleading has been filed within the applicable time period set forth in the Third Amended Plan, or (ii) an objection or other similar pleading has been filed and the Claim or Interest has been allowed by a Final Order but only to the extent so allowed.  To the extent that all or a portion of a Claim is not Allowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is not Allowed.

1.3     Allowed Amount shall mean the amount of any Allowed Claim or Allowed Interest.

1.4     Androscoggin shall mean Androscoggin Bank and its affiliates, successors, agents, and assigns.

1.5    <u>Assets</u> means all property that would be property of the Debtor and the Debtor's estate under § 541 of the Bankruptcy Code, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all proceeds of and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate.

1.6    <u>Bankruptcy Code</u> shall mean 11 U.S.C. §§ 101 *et seq.*, as in effect with respect to the Case on the Petition Date.  All Bankruptcy Code references herein are to the Bankruptcy Code in effect as of the Petition Date, unless otherwise stated.

1.7    <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the District of Maine, or any other court with jurisdiction over the Case.

1.8    <u>Bar Date</u> shall mean September 10, 2014, the date established by the Bankruptcy Court as the deadline for filing proofs of claims or interests in the Case.

1.9    <u>BOA</u> shall mean Bank of America and its affiliates, successors, agents, and assigns.

1.10    <u>Bramhall Street</u> means a 3-unit apartment building at 52 Bramhall Street, Portland, Maine owned by the Debtor.

1.11    <u>BMW</u> means BMW Bank of North America and its affiliates, successors, agents, and assigns (including BMW Financial Services, LLC).

1.12    <u>Case</u> shall mean the Chapter 11 Case of the Debtor now pending in the Bankruptcy Court pursuant to Chapter 11 of the Bankruptcy Code.

1.13    <u>Cash</u> shall mean payment, including by check, issued by or on behalf of the Debtor with respect to any payment of collected funds required to be made pursuant to the Third Amended Plan.

1.14    <u>Cause of Action</u> shall mean all claims and causes of action now owned or hereafter acquired by the Debtor and/or its estate, whether arising under the Bankruptcy Code or other federal or state law, including, without limitation, Chapter 5 Causes of Action

3

1.15   Chapter 5 Causes of Action shall mean all Causes of Action (as that term is defined *infra* at §1.11 arising under Chapter 5 of the Bankruptcy Code (including, but not limited to, causes of action arising under 11 U.S.C. §§ 544, 547, 548, 549, 550, and 553).

1.16   Citibank shall mean Citibank, N.A. as Trustee for Bear Stearns ALT-A Trust II, Mortgage Pass-Through Certificates Series 2007-1 and its affiliates, successors, agents, and assigns.

1.17   Claim shall mean a claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor.

1.18   Confirmation Date shall mean the date upon which the Confirmation Order becomes a Final Order, provided that such order is not, as of said date, stayed.

1.19   Confirmation Order shall mean an Order (which need not be a Final Order) confirming the Third Amended Plan and/or any amendment thereto pursuant to § 1129 of the Bankruptcy Code.

1.20   Crescent View means a 3-unit apartment building at 1 Crescent View Avenue, Cape Elizabeth, Maine owned by the Debtor.

1.21   Disbursing Agent shall mean the entity appointed pursuant to Article VII of this Third Amended Plan to disburse funds to holders of Allowed Claims pursuant to the provisions of this Third Amended Plan.

1.22   Effective Date shall mean the date determined in accordance with Article VI of the Third Amended Plan.

1.23   Encumbrances shall mean all liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

1.24   Executory Contract shall mean an executory contract within the meaning of § 365 of the Bankruptcy Code.

1.25   Fee Claim shall mean the Administrative Claim of a professional person for compensation and/or reimbursement of expenses.

1.26   Final Order shall mean an Order of any court, administrative agency or other tribunal as entered on its docket as to which (a) the time to appeal or petition for rehearing or *certiorari* has expired and as to which no appeal or motion for rehearing or petition for *certiorari* has been timely filed or taken, (b) if such an appeal or motion for rehearing or petition for *certiorari* has been

4

timely filed or taken, such order or judgment has been affirmed by the highest tribunal in which review was sought or such appeal, motion for rehearing or petition for *certiorari* was dismissed or otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

1.27    <u>Greenleaf Claims</u> means any all Claims falling into Class Four and Class Five as defined below at Article III.

1.28    <u>Harley Davidson</u> means Harley Davidson Credit Corp. and its affiliates, successors, agents, and assigns.

1.29    <u>HSBC</u> shall mean HSBC Bank USA, N.A. as Trustee on behalf of the holders of Deutsche Bank Alt-A Securities Mortgage Loan Trust, Mortgage Pass Through Certificate Series 2007-AR2 and its affiliates, successors, agents, and assigns.

1.30    <u>MCM PA</u> means Ventures Trust 2013-I-H-R by MCM Capital Partners and its affiliates, successors, agents, and assigns.

1:31    <u>Monthly Disposable Income</u> means the difference between the Debtor's monthly income and those amounts reasonably necessary to be expended for (a) maintenance or support of the Debtor and dependents of Debtors; and (b) for the continuation, preservation, and operation of the Debtor's business.

1.32    <u>Nationstar</u> shall mean Nationstar Mortgage, LLC and its affiliates, successors, agents, and assigns.

1.33    <u>Northeast</u> shall mean Northeast Bank and its affiliates, successors, agents, and assigns.

1.34    <u>Order</u> shall mean an order of the Bankruptcy Court.

1.35    <u>Our Oil</u> shall mean Our Oil, LLC and its affiliates, successors, agents, and assigns.

1.36    <u>Petition Date</u> shall mean May 18, 2014.

1.37    <u>Pine Tree</u> shall mean Pine Tree Waste and its affiliates, successors, agents and assigns.

1.38    <u>Third Amended Plan</u> shall mean this Third Amended Plan of Reorganization, dated July 27, 2017, as it may be amended or modified by

the Debtor from time to time (or such other interest rate as the Court may order or the Debtor may agree upon with the relevant parties-in-interest), together with all exhibits, schedules and other attachments hereto, as the same may be amended or modified by the Debtor from time to time (or such other interest rate as the Court may order or the Debtor may agree upon with the relevant parties-in-interest), all of which are incorporated herein by reference.

1.39    Post-Petition Bar Date shall mean the date that is twenty-one (21) days after the Confirmation Date.

1.40    Prime Rate shall mean the annualized rate of interest designated as the "Prime Rate" as published in the Money Rates Section of the Wall Street Journal, Eastern Edition, as of the Effective Date.  If the Prime Rate shall no longer be published in the Money Rates or any other section of The Wall Street Journal, then the holder(s) of an obligation payable with interest at the Prime Rate pursuant to this Third Amended Plan shall have the right, exercising reasonable judgment, to substitute a new method for determining a comparable per annum interest rate to be charged by the holder(s) and such rate of interest determined by such method shall become the Prime Rate for the purpose of this Third Amended Plan and any obligation issued pursuant to this Third Amended Plan.

1.41    Priority Claim shall mean an Unsecured Claim arising before the Petition Date and allowable under §§ 507(a)(2) through 507(a)(9) of the Bankruptcy Code.

1.42    Rental Properties shall mean Bramhall Street, Crescent View, Spring Street, State Street #1, and State Street #2.

1.43    Secured Claim shall mean a claim that is secured by a perfected (or similarly binding) Encumbrance on any of the Debtor's assets, to the extent provided in 11 U.S.C. § 506 of the Bankruptcy Code.

1.44    Spring Street means a 4-unit apartment building at 254 Spring Street, Portland, Maine owned by the Debtor.

1.45    State Street #1 means the condominium unit located at 52 State Street #1, Portland, Maine.

1.46    State Street #2 means the condominium unit located at 52 State Street #2, Portland, Maine.

1.47    Unsecured Claim shall mean a Claim which arose before the Petition Date and which is not secured by any interest in any property of the Debtor's

estate, and shall include a Claim which arises from the rejection of an Executory Contract or Unexpired Lease, within the meaning of § 365 of the Bankruptcy Code; provided, however, that in order to be an Unsecured Claim, such claim must be evidenced by a proof of claim which has been timely filed by the holder of the Claim (whether or not such proof of claim has been Allowed) prior to the Bar Date or the Rejection Bar Date (as that term is defined below in Article VIII) as may be applicable, or such Claim must be described on Schedule F filed by the Debtor and not noted as unliquidated, contingent or disputed on such Schedule (whether or not such claim is deemed Allowed).

## *ARTICLE II – TREATMENT OF NON-CLASSIFIED CLAIMS*

2.1     <u>Administrative Claims</u>.   Except as otherwise provided by the Third Amended Plan or as otherwise agreed between the Debtor and the holder of an Allowed Administrative Claim against the Debtor, each holder of an Allowed Administrative Claim shall be paid in full upon the later of the Effective Date and the date which is thirty (30) days after the date upon which such Administrative Claim becomes an Allowed Administrative Claim.

2.2     <u>Priority Claims</u>.  Except as otherwise agreed by the Debtor and the holder of an Allowed Priority Claim against the Debtor the holders of Allowed Priority Claims, shall, in the sole discretion of the Debtor, be paid either (a) in full upon the later of the Effective Date and the date which is thirty (30) days after the date upon which such Priority Claim becomes an Allowed Priority Claim; or (b) in the case of priority claims described in § 507(a)(8) of the Bankruptcy Code, pursuant to the terms of § 1129(a)(9)(C).

2.3     <u>Bankruptcy Fees</u>.  Any Administrative Claim for outstanding fees incurred in the Case pursuant to 28 U.S.C. § 1930(a)(6) and due and payable as of the Effective Date shall be paid in full on the Effective Date.  Thereafter, the Debtor shall pay any and all fees lawfully due and payable under 28 U.S.C. § 1930(a)(6) with respect to the Case in the ordinary course without necessity of allowance by the Court until entry of an Order closing the Case.

## *ARTICLE III – DESIGNATION OF CLASSES OF CLAIMS*

Claims that are required or permitted to be classified under Bankruptcy Code § 1123(a)(1) are hereby classified into the following classes:

3.1     <u>Class One</u> shall consist of all Allowed Secured Claims of any kind or nature held by Androscoggin.  Androscoggin's Allowed Secured Claim is secured by a first priority mortgage on Spring Street and a second-priority mortgage in Crescent View.

3.2     <u>Class Two</u> shall consist of all Allowed Secured Claims of any kind or nature held by MCM PA.  MCM PA's Claim is secured by a mortgage on State Street #1.

3.3    <u>Class Three</u> shall consist of all Allowed Secured Claims of any kind or nature held by Nationstar.  Nationstar's Claim is secured by a mortgage on State Street #2.

3.4    <u>Class Four</u> shall consist of all Allowed Secured Claims of any kind or nature held by HSBC.  HSBC asserts that its Claim is secured by a mortgage on Bramhall Street.

3.5    <u>Class Five</u> shall consist of all Allowed Secured Claims of any kind or nature held by Citibank.  Citibank asserts that its Claim is secured by a mortgage on Crescent View

3.6    <u>Class Six</u> shall consist of all Allowed Secured Claims of any kind or nature held by BMW and secured by a lien in a certain 2011 BMW 5 Series sedan 4D 535i, which Allowed Secured Claim shall be in the amount of $21,943.82.

3.7    <u>Class Seven</u> shall consist of all Allowed Secured Claims of any kind or nature held by Harley Davidson and secured by a lien in a certain 2011 Harley Davidson FLSTFB Fat Boy Lo.

3.8    <u>Class Eight</u> shall consist of all Allowed Secured Claims of any kind held by Pine Tree.

3.9    <u>Class Nine</u> shall consist of the holders of all Allowed Unsecured Claims, including Allowed Unsecured Claims held by MCM PA, Nationstar, BMW, Our Oil, and any other creditor who holds an Allowed Claim that is not secured by collateral, and Allowed Unsecured Claims arising from the rejection, prior to or after the Confirmation Date, of an executory contract or unexpired lease.

### *<u>ARTICLE IV -- TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS</u>*

The following Classes of Claims are definitively <u>unimpaired</u> under this Third Amended Plan, within the meaning of Bankruptcy Code §1124: Class One, Class Four, Class Five, Class Seven, and Class Eight.  The following classes of Claims are <u>impaired</u> within the meaning of § 1124 of the Bankruptcy Code and the treatment of each of these classes of Claims is set forth below: Class Two, Class Three, Class Six, and Class Nine.

4.1    <u>Class One</u>.  In full and final satisfaction of the Allowed Secured Claims in Class One, the Debtor shall perform, pay and satisfy all of his obligations to the holder of claims in Class One (Androscoggin) in the manner described in various documents evidencing those obligations.  Androscoggin shall be secured by the same collateral which secured the Class One Claim on the Petition Date: a first-priority mortgage on Spring Street and a second-priority mortgage on Crescent View.  Class One is unimpaired and is not entitled to vote on the merits of the Third Amended Plan.

4.2    <u>Class Two</u>.  MCM PA asserts Claims against the Debtor based on monies lent by Option One Mortgage Corporation, and those obligations are secured by a mortgage on State Street #1, which real property has a fair market value of ***$245,000.00*** pursuant to

an appraisal conducted in November of 2014.  In full and final satisfaction of all Allowed Claims in Class Two, MCM PA shall be deemed to have an Allowed Secured Claim in that amount.  The Debtor shall issue MCM PA a promissory note, in the total amount of such Allowed Secured Claim, such promissory note (the "MCM PA Note") to be payable in consecutive, equal monthly installments of principal and interest, based upon an amortization schedule calling for the payment of the MCM PA Note in full, together with all interest in three hundred and sixty (360) months at an interest rate of 4.0% *per annum* with a balloon payment of the remaining principal due on the date that the sixtieth (60th) payment is due. The MCM PA Note shall issue on the Effective Date.  Payments on the same shall commence pursuant to the terms of the MCM PA Note. Payments shall continue for a total of sixty (60) monthly installments. The MCM PA Note shall be secured by the same collateral which secured the Class Two Claim on the Petition Date.  Class Two is impaired and, therefore, is entitled to vote on the Third Amended Plan.

4.3     Class Three.  Nationstar asserts Claims against the Debtor based on monies lent by Bank of America and those obligations are secured by a first-priority mortgage on State Street #2, which has a fair market value of **$85,000.00**.  Nationstar shall be deemed to have an Allowed Secured Claim in that amount.  The Debtor shall issue Nationstar a promissory note, in the total amount of such Allowed Secured Claim, such promissory note (the "Nationstar Note") to be payable in consecutive, equal monthly installments of principal and interest, based upon an amortization schedule calling for the payment of the Nationstar Note in full, together with all interest in three hundred and sixty (360) months at an interest rate of 4.0% *per annum* with a balloon payment of the remaining principal due on the date that the sixtieth (60th) payment is due.  The Nationstar Note shall issue on the Effective Date.  Payments on the same shall commence pursuant to the terms of the Nationstar Note. Payments shall continue for a total of sixty (60) monthly installments. The Nationstar Note shall be secured by the same collateral which secured the Class Three Claim on the Petition Date.  Class Three is impaired and is entitled to vote on the merits of the Third Amended Plan.

4.4     Class Four.  HSBC asserts Claims against the Debtor based on monies lent by True North Mortgage, LLC ("True North") and alleges that those obligations are secured by a mortgage on Bramhall Street.  In full satisfaction of all Claims in Class Four, the Debtor has consented to relief from the automatic stay to allow HSBC to pursue any state law rights and remedies it may have as to Bramhall Street, its mortgage, and the related loan agreements as set forth in the Bankruptcy Court's October 20, 2016, Agreed Order Regarding Relief Pursuant to 11 U.S.C. § 362(d) [D.E. # 288].  ***Pursuant to the Court's June 27, 2017 denying confirmation of the Debtor's Second Amended Plan and the accompanying memorandum [D.E. ## 362, 362], the Debtor will not use any cash collateral from Bramhall Street to satisfy his obligations under the Third Amended Plan.*** Pursuant to HSBC's proof of claim and the Court's orders related to the same, Citibank has no other Allowed Claims of any sort against the Debtor.   Because HSBC has relief from stay and the Court has ruled that the Debtor may not use cash collateral arising from the rent of Bramhall Street, Class Four is unimpaired.  Therefore, it is deemed to have accepted the Third Amended Plan and solicitation of this Class' vote is not required pursuant to 11 U.S.C. § 1126(f).

4.5     Class Five. Citibank asserts Claims against the Debtor based on monies lent by Bear Stearns Residential Mortgage Corporation ("Bear Stearns") and alleges that those obligations are secured by a mortgage on Crescent View. In full satisfaction of all Claims in Class Five, the Debtor has consented to relief from the automatic stay to allow Citibank to pursue any state law rights and remedies it may have as to Crescent View, its mortgage, and the related loan agreements as set forth in the Bankruptcy Court's October 20, 2016, Agreed Order Regarding Relief Pursuant to 11 U.S.C. § 362(d) [D.E. # 287]. The Debtor in turn reserves all of its own state law rights and remedies. ***Pursuant to the Court's June 27, 2017 denying confirmation of the Debtor's Second Amended Plan and the accompanying memorandum [D.E. ## 362, 362], the Debtor will not use any cash collateral from Crescent View to satisfy his obligations under the Third Amended Plan.*** Pursuant to Citibank's proof of claim and the Court's orders related to the same, Citibank has no other Allowed Claims of any sort against the Debtor.  Because Citibank has relief from stay and the Court has ruled that the Debtor may not use cash collateral arising from the rent of Crescent View, Class Five is unimpaired. Therefore, it is deemed to have accepted the Third Amended Plan and solicitation of this Class' vote is not required pursuant to 11 U.S.C. § 1126(f).

4.6     Class Six. In full and final satisfaction of all Allowed Claims in Class Six, the Debtor shall issue BMW a promissory note, such promissory note (the "Class Six Note") to be in the amount of $21,943.82 payable in consecutive, equal monthly installments of principal and interest (the Debtor has already made adequate protection payments in the aggregate amount of $1,056.18), based upon an amortization schedule calling for the payment of the Note in full, together with all interest in seventy-two (72) months at an interest rate of 4.25% *per annum*. The Class Six Note shall issue on or before the Effective Date and payments on the same shall commence on the day that is thirty (30) days after that date.  Payments shall continue for a total of seventy-two (72) monthly installments. Should the Debtor default in payment during the term of the note, BMW will provide a notice of default to the Debtor, with a right to cure within 21 days.  If the Debtor fails to cure the default within 21 days, BMW may seek enforcement of its rights without further order of the Bankruptcy Court. The Note shall be secured by the same collateral which secured the Class Six Claim on the Petition Date. Class Six is impaired and is entitled to vote on the merits of the Amended Plan.

4.7     Class Seven. In full and final satisfaction of all Allowed Claims in Class Seven (as well as any other Claims Harley Davidson may have against the Debtor or his estate), the Debtor shall turn over the collateral securing those Allowed Claims on or before the Effective Date of the Third Amended Plan. Class Seven is unimpaired and, therefore, it is deemed to have accepted the Amended Plan and solicitation of this Class' vote is not required pursuant to 11 U.S.C. § 1126(f).

4.8     Class Eight. Pine Tree asserts Claims against the Debtor based a lien placed on the Debtor's Assets prior to the Petition Date.  In full and final satisfaction of all Claims in Class Eight, Pine Tree shall retain all liens and encumbrances it already has on the Debtor's assets in the same priority and amount as it had as of the Petition Date and Pine

Tree shall be free to exercise any rights that may arise from such liens and encumbrances after the Effective Date of the Third Amended Plan. Class Eight is unimpaired and, therefore, it is deemed to have accepted the Third Amended Plan and solicitation of this Class' vote is not required pursuant to 11 U.S.C. § 1126(f).

4.9    Class Nine. In full and final satisfaction of the Claims in Class Nine, each holder of an Allowed Claim in Class Nine shall receive a *pro rata* share of a fund which shall be held and administered by the Disbursing Agent appointed pursuant to this Third Amended Plan (the "Class Nine Fund"), and which shall be comprised of payments made into the fund by the Debtor in accordance with the terms hereof. Class Nine is impaired and is entitled to vote on the merits of the Third Amended Plan.

### 4.9.1    *Calculation of Monthly Disposable Income*

For purposes of the Third Amended Plan, Monthly Disposable Income shall be 90% of the Debtor's net income from Spring Street, State Street #1, and State Street #2 in any given month and his monthly after-tax income from the Debtor's new external job. Net income shall be calculated as follows: [gross rental proceeds from Spring Street, State Street # 1 and State Street # 2] **plus** [the Debtor's monthly after-tax income from his external job] **minus** [all operating expenses for the Spring Street, State Street #1, and State Street #2] and [the Debtor's personal expenses (including his Class Six car payment), including the payment of Allowed Administrative Claims of $500 per month].

For example, if gross rents for Bramhall Street, State Street #1, and State Street #2 in a given month were $12,000 and the Debtor's external job paid him an after tax salary of $760, then all income would be $12,760 for that month. The Debtor would then subtract from that $12,760 the operating expenses for those properties, say $7,700 and his personal expenses of $3,950 (includes monthly Class Six car payment), leaving $1,110.00. Monthly Disposable Income for Third Amended Plan purposes would be $990 ($1,100 x 90%). If the Debtor had six successive months of similar performance, his aggregate MDI Payment (as that term is defined below) for that period to holders of Allowed Class Claims would be approximately almost $6,000.

Notwithstanding this net income calculation, Monthly Disposable Income **will never be less than $200.00 month**.

In addition, the Debtor shall sell his unencumbered Audi and Volkswagen motor vehicles with the net proceeds after costs of sale to be added to the fund and paid when the next bi-annual payment comes due; the Debtor estimates that this will guarantee Monthly Disposable Income Payments of at least ***$13,500.00***, with the possibility of more, depending on each month's net income from the Rental Properties (the Debtor directs the reader's attention to his Disclosure Statement filed contemporaneously herewith for a more detailed discussion of this funding mechanism).

### 4.9.2   *The MDI Payments*

The Debtor shall contribute to the Class Nine Fund a sum representing his Monthly Disposable Income based on net income from the Rental Properties each month for the sixty (60) months immediately following the Effective Date of the Third Amended Plan (the "Class Nine Payment Period"). The Debtor shall then make bi-annual payments to holders of Allowed Secured Claims of their *pro* rata share of the aggregate Monthly Disposable Income payments (the "MDI Payments"). The first MDI payment shall be made on the day that is six (6) months after the Effective Date.

## *ARTICLE V – MEANS FOR EXECUTION OF THE THIRD AMENDED PLAN*

5.1   The Debtor shall implement the Third Amended Plan, and shall make Third Amended Plan Distributions and other payments as set forth herein, to holders of Allowed Claims, using the following sources of funds:

> (a)   Income from Debtor's new job, which is expected to begin on or about September 1, 2017, after the Debtors' minor children return to school (the Debtor directs the reader's attention to the Disclosure Statement filed contemporaneously herewith for a longer discussion of this new income source);

> (b)   Revenues from continued operations of Spring Street, State Street #1, and State Street #2;

> (c)   Cash on hand;

> (d)   Assumption or rejection of certain contract and lease obligations;

> (e)   Liquidation of unencumbered motor vehicles; and

> (e)   Refinancing of State Street #1, and State Street #2 to make the balloon payments contemplated by the Plan Treatment for Class Two and Class Three.

## *ARTICLE VI – THE EFFECTIVE DATE*

6.1   Effective Date.   Unless the Confirmation Order has been stayed prior thereto, the Effective Date shall be the day that is thirty (30) days from the Confirmation Date. If such date falls on a weekend date or a holiday, the Effective Date shall be the next day which is not a weekend day or a holiday.

## *ARTICLE VII – THE DISBURSING AGENT AND THE CLASS NINE FUND*

7.1   Disbursing Agent.   The Debtor is hereby appointed as Disbursing Agent for all purposes under the Third Amended Plan. The Disbursing Agent shall receive and hold

the Class Nine Payments as described in Article IV, § 4.9 of this Third Amended Plan, in a segregated, non-interest bearing account – the Class Nine Fund – maintained at a federally insured financial institution, and shall make disbursements of monies in the Class Nine Fund to holders of Allowed Claims in Class Nine in accordance with the provisions of this Article and Article IV, § 4.9.

7.2    <u>Class Nine Fund</u>.  The Disbursing Agent shall deposit all funds required to be deposited pursuant to Article IV, § 4.9 (*i.e.*, the MDI Payments) into the Class Nine Fund.

7.3    <u>Timing of Distributions</u>.  The first MDI Payment shall be made on the date that is six months from the Effective Date.  Subsequent distributions shall be made in ensuing intervals of six (6) months each.  Upon each distribution date, the holders of Allowed Claims in Class Nine shall receive their *pro rata* share of the Class Nine Fund, subject to and upon the terms of this Article VII.

7.4    <u>Unpaid Distributions</u>.  Distributions to holders of Allowed Class Nine Claims, will be made at the addresses reflected in the proofs of claim filed by the holders of Allowed Claims or, if no proof of claim was filed, at the addresses set forth in the Debtor's Schedules; or at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim.  If any Distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all missed distributions will be made to the holder without interest.  All claims for undeliverable distributions must be made to the Debtor on or before the six (6) month anniversary of the Effective Date.  After that date, all unclaimed property will vest in the Debtor, and the Claim of any holder with respect to such property will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Third Amended Plan.

7.5    <u>Retention of Funds for Disputed Claims</u>.  The Debtor shall maintain in the Class Nine Fund cash in an amount sufficient to pay each holder of a disputed, contingent or unliquidated Class Nine Claim the amount that such holder would have been entitled to receive under this Third Amended Plan if such Class Nine Claim had been an Allowed Claim on the Effective Date.  If, on or after the Effective Date, any disputed, contingent or unliquidated Class Nine Claim becomes an Allowed Claim, the Disbursing Agent shall distribute from the Disputed, Contingent and Unliquidated Claims Reserve Fund to the holder of such Allowed Class Nine Claim the amount of cash that such holder would have been entitled to receive under this Third Amended Plan if such Claim had been an Allowed Class Nine Claim on the Effective Date in the amount in which it has become an Allowed Claim.  Such distribution shall be made in a manner consistent with the treatment of the other holders of Allowed Class Nine Claims.  After determination of all objections, any disputed, contingent or unliquidated Claim has been disallowed, the amount held in the Disputed, Contingent and Unliquidated Claims Reserve Fund on account of the disallowed claims shall be payable by the Disbursing Agent first, *pro rata*, to any unpaid Allowed Administrative Expenses (if any); second, *pro rata*, to any unpaid Allowed Priority Claims (if any); and third, *pro rata*, to holders of unsatisfied Class Nine Claims (if any); fourth, returned to the Debtor.

7.6     <u>Time Bar to Cash Payments</u>.  Checks issued by the Debtor in respect of distributions to holders of Allowed Class Nine Claims pursuant to this Third Amended Plan will be null and void if not cashed within one hundred twenty (120) days of the date of their issuance.  Requests for reissuance of any check shall be made to the Debtor by the holder of the Allowed Claim with respect to which the check originally was issued.  Any claim in respect of such a voided check must be made on or before six (6) months after the date of issuance of the check.  After that date, all claims in respect of void checks will be discharged and forever barred and the cash, including interest earned thereon, if any, shall be delivered to and vest in the Debtor.

7.7     <u>De Minimis</u> Distributions.  No cash payment of less than twenty dollars ($20.00) will be made by the Disbursing Agent to any creditor unless a request is made in writing to the Debtor to make such a payment.

## *ARTICLE VIII – TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES*

8.1     <u>Assumption/Rejection of Certain Executory Contracts and Unexpired Leases</u>.

(a)     Unless (i) the subject of a motion to assume an executory contract or unexpired lease that is pending as of the Confirmation Date; or (ii) an executory contract or unexpired lease is dealt with by a Final Order of the Bankruptcy Court entered on or prior to the Effective Date, any and all executory contracts and unexpired leases of the Debtor that were entered into prior to the Petition Date shall be deemed rejected as of Confirmation  Date, if not earlier rejected by other orders of the Bankruptcy Court.  If an executory contract or unexpired lease is the subject of a motion to assume as of the Confirmation Date, then such executory contract shall be assumed or rejected in accordance with an order entered into by the Court with respect to such motion, or in accordance with an agreement of the Debtor and the non-debtor party(ies) to such executory contract.

(b)  The non-Debtor party to any such rejected contract or lease shall be required to assert a claim for damages from such rejection in accordance with Article VIII, § 8.2.

8.2     <u>Damages.</u>  Any claim for damages arising from the rejection or deemed rejection of an executory contract or unexpired lease must be filed on or before fourteen (14) days after Confirmation Date of the Third Amended Plan (the "<u>Rejection Bar Date</u>") (unless said executory contract or unexpired lease is the subject of a pending motion to assume as of the Effective Date), or by such other date as may be specified by Order of the Bankruptcy Court and, if not so filed, will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Third Amended Plan.  All Allowed Claims arising from the rejection of executory contracts and unexpired leases shall be classified as Allowed Unsecured Claims in Class Nine of the Third Amended Plan.

## *ARTICLE IX  –  MISCELLANEOUS PROVISIONS*

9.1     <u>Legally Binding Effect</u>.  The provisions of the Third Amended Plan shall bind all holders of Claims and Interests, whether or not they accept the Third Amended Plan.

9.2     <u>Claims Subject to Allowance</u>.  Notwithstanding any other provision of the Third Amended Plan, no distribution shall be made on account of any Claim until such Claim is Allowed.

9.3     <u>Prepetition Claim and Amendments</u>.  Each Claim as to which a proof of claim was required to be filed on or before the Bar Date and as to which a proof of claim was not filed on or before the Bar Date shall not under any circumstances become an Allowed Claim.  In no event shall the Allowed Amount of any Claim against the Debtor exceed the amount set forth in a proof of claim therefor filed on or before the Bar Date unless the claimant in its proof of claim expressly reserved the right to amend such proof of Claim, in which case any such amended proof of claim must be filed by the Confirmation Date.  No Order allowing or disallowing a Claim may be reconsidered, pursuant to the Bankruptcy Code Section 502(j) or otherwise, so as to increase the Allowed Amount thereof after entry of the Confirmation Order.

9.4     <u>Objections to Prepetition Claims and Interests</u>.  Claims and Interests that (a) arose prior to the Petition Date; or (b) arise from the rejection of executory contracts and unexpired leases (*see* Article VIII, §§ 8.1 and 8.2 above), and which have not been scheduled by the Debtor as contingent, unliquidated or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date or the Rejection Bar Date (as the case may be), shall be allowed in full, unless an objection to such Claim or Interest is filed on or before the date which is twenty-eight (28) days after the Confirmation Date.  Claims that have been scheduled as disputed and/or objected to and not allowed shall have no right to vote with respect to the acceptance or rejection of this Third Amended Plan except as otherwise ordered by the Court.

9.5     <u>Bar Date for and Objection to Post-Petition Claims</u>.  Any Claim entitled to priority under Bankruptcy Code § 503(a) arising before the Confirmation Date and still outstanding 60 days thereafter, except for a Fee Claim, shall be forever barred unless it is the subject of a proof of claim filed with the Bankruptcy Court on or before the Post-Petition Bar Date.  Any Claim that is the subject of such a proof of claim shall be Allowed in full unless an objection thereto is filed within ten (10) days after the Post-Petition Bar Date (*i.e.*, 31 days after the Confirmation Date) or such other date as is provided by Order upon motion of the Debtor.

9.6     <u>Means of Cash Payment</u>.  Cash payments made pursuant to the Third Amended Plan will be in United States funds, by the means agreed to by the Debtor and the respective holders of Allowed Claims, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Debtor shall reasonably determine.

9.7    Debtor's Assets and Causes of Action.  On the Effective Date of the Third Amended Plan, all property of the Debtor's bankruptcy estate shall vest in the Debtor, subject only to liens and encumbrances that are not discharged and that are continued in full force and effect pursuant to this Third Amended Plan.  On and after the Confirmation Date, and subject to compliance with the terms of this Third Amended Plan, the Debtor may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of the Debtor's Assets for the purpose of liquidating and converting such assets to cash, making distributions, and fully consummating the Third Amended Plan. Without limiting the generality of the foregoing, the Debtor shall retain all Causes of Action, including all causes of action against any purported secured creditor of the Debtor challenging the amount, validity, enforceability, or priority of any allegedly secured claim.

9.8    Discharge.  Confirmation of the Third Amended Plan does not discharge any debt provided for in the Third Amended Plan until the Bankruptcy Court grants a discharge on completion of all payments under the Third Amended Plan, or as otherwise provided in 11 U.S.C. § 1141(d)(5).  The Debtor will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

9.9    Release / Subordination of Encumbrances.   The entry of an order confirming this Third Amended Plan shall constitute the immediate release and discharge of any contractual or statutory Encumbrance – including any judicial lien or other Encumbrance held by Our Oil and related to the disallowed and expunged Claim of Our Oil against the estate (see the Bankruptcy Court's January 6, 2015, Order Granting Debtor's First Omnibus Objection to Claims Pursuant to Federal Rule of Bankruptcy Procedure 3007(d) and Notice of Response Deadline (the "First Claims Order")) – unless this Third Amended Plan or the Confirmation Order requires the continuation in effect of any of such Encumbrances.  Any holder of an Encumbrance that is discharged pursuant to this Third Amended Plan shall, upon request of the Debtor, execute and deliver to the Debtor such documents and agreements, in recordable form, as are reasonably necessary to cause the discharge of record of any such Encumbrance.  In the event that any such holder fails and refuses to do so, then the Debtor may cause to be recorded a discharge of such Encumbrance.

9.10    Injunction and Stay.  Upon entry of the Confirmation Order the terms of the Third Amended Plan will bind the Debtor and the holders of all claims against the Debtor, whether or not those claim holders filed a proof of claim or voted in favor of the Third Amended Plan.  Once the Debtor completes all payments required by the Third Amended Plan, the Debtor may seek the entry of a discharge order enjoining all claim holders from any action to enforce a claim or collect any debt owed by the Debtor prior to confirmation. Pending entry of a discharge order, the terms of the Third Amended Plan replace any and all repayment terms which existed between the Debtor and his creditors prior to confirmation, unless the Court orders otherwise, and except as expressly provided in the Third Amended Plan.  The Bankruptcy Court retains jurisdiction to resolve any disputes

which arise with respect to the terms of the Third Amended Plan and the compliance of all parties therewith.

9.11  Modification of Confirmed Third Amended Plan.  After the Confirmation Date, the Debtor may modify the Third Amended Plan under Bankruptcy Code § 1127 and may remedy any defect or omission or reconcile any inconsistency in the Third Amended Plan or in the Confirmation Order in such manner as may be necessary or appropriate to carry out the purposes and intent of the Third Amended Plan, so long as the interests of holders of Claims and Interests are not materially and adversely affected thereby.

9.12  Substantial Consummation.  The Third Amended Plan shall be deemed to have been substantially consummated when all of the requirements of § 1101(2) of the Bankruptcy Code shall have been satisfied.

9.13  Closing of Case.  The Case shall be deemed closed at such time as the Order closing the Case pursuant to § 350 of the Bankruptcy Code has been entered by the Bankruptcy Court on the motion of the Debtor, and the Order becomes a Final Order.

9.14  Retained Jurisdiction.  The Bankruptcy Court shall retain jurisdiction over the Case after the Confirmation Date for the following purposes:

(a)  to hear and determine any disputes arising under the Third Amended Plan, its implementation and execution of any necessary documents thereunder, and any requests to amend, modify, or correct the Third Amended Plan, provided that such matters are brought before the Court prior to the point of Substantial Consummation as that term is defined in Bankruptcy Code § 1101(2) of the Bankruptcy Code and by the Third Amended Plan itself, and subject, further, to the restrictions set forth in Bankruptcy Code § 1127(b);

(b)  to grant extensions of any deadlines set forth in the order confirming this Third Amended Plan as may be appropriate;

(c)  to enforce all discharge provisions under the Third Amended Plan, including the provisions of § 9.8 of this Article; and

(d)  to review and rule upon applications for compensation of professional persons.

9.15  Exculpation.  Neither the Debtor, nor any of its respective attorneys, consultants, advisors, and agents (acting in such capacity), shall have or incur any liability to any entity for any act taken or omitted to be taken in the Debtor's Chapter 11 case, including in the formulation, preparation, dissemination, implementation, confirmation or approval of the Third Amended Plan, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Third Amended Plan; provided, however, that the

17

provisions of this Section not affect the liability of any entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence, willful misconduct or breach of fiduciary duty.  Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Third Amended Plan.

9.16    Exemption from Transfer Taxes.  Pursuant to Section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Third Amended Plan, including the execution, delivery and recording of any deeds, bills of sale or assignments executed in connection with any disposition of assets under, in furtherance of, or in connection with the Third Amended Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

9.17    Binding Effect.  Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Third Amended Plan shall bind any holder of a Claim against, or Interest in, the Debtor and his respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Third Amended Plan and whether or not such holder has accepted the Third Amended Plan.  The rights, benefits and obligations of any entity named or referred to in the Third Amended Plan, whose actions may be required to effectuate the terms of the Third Amended Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for the Debtor under chapters 7 or 11 of the Bankruptcy Code).

9.18    Severability.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Third Amended Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Third Amended Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Third Amended Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

9.19    Headings.   Headings are utilized in the Third Amended Plan for convenience and reference only and shall not constitute a part of the Third Amended Plan for any other purpose.

9.20    Third Amended Plan Controls.  To the extent that the Third Amended Plan is inconsistent with the Disclosure Statement, the provisions of the Third Amended Plan shall be controlling.

Dated:  July 27, 2017              SHAI SHAWN TAMIR


/s/ David C. Johnson
David C. Johnson
Jennie L. Clegg
Katherine M. Krakowka

Attorneys for the Debtor

MARCUS | CLEGG
One Canal Plaza
Suite 600
Portland ME 04101-4035
207.828.8000