**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: | ) |
| | )    **Chapter 11** |
| SHAI SHAWN TAMIR, | )    **Case No. 14-20368** |
| | ) |
| Debtor. | ) |

**ORDER CONFIRMING PLAN OF REORGANIZATION**
**DATED JULY 27, 2017**

On November 13, 2017, this Court conducted a hearing (the "Hearing") on confirmation of Debtor's Third Amended Plan of Reorganization dated July 27, 2017, (the "Plan") [D.E. # 368], as amended on October 2, 2017 by D.E. # 386 (all capitalized terms used herein shall have the meaning ascribed to such terms in the Plan, unless otherwise defined herein). This Court by its Order dated October 3, 2017 (the "Approval Order") [D.E. # 390], having ruled that the Disclosure Statement in support of the Plan provided sufficient information; the Debtor having timely caused true and correct copies of the Approval Order, the Plan, the Disclosure Statement, and ballots conforming to Official Form 14 to all known holders of Claims against the Debtor and to all other parties (including all parties who have filed a notice of appearance in the above-captioned case) entitled to receive copies of same, such notice and service being hereby determined to be timely, adequate and sufficient notice and service to all holders of Claims against the Debtor, and all other parties in interest under the circumstances of the above-captioned case; the Approval Order having set November 1, 2017, at 5:00 p.m. as the deadline for filing objections to confirmation of the Plan and for submission of ballots containing written acceptances and rejections of the Plan; the State of Maine Bureau of Revenue Service ("MRS") [D.E. # 398]; HSBC [D.E. # 402], Citi [D.E. #

1

403]; and Nationstar [D.E. # 404] having filed objections to confirmation of the Plan (the "Objections").

The MRS Objection having been satisfied by the filing of the some of the requested tax returns and the inclusion of additional language, provided that filings are completed by December 1, 2017, *infra*, and the Nationstar Objection having been satisfied by the amended Class Three treatment set forth *infra*, an offer of proof having been made by the Debtor concerning the Debtor's satisfaction of and compliance with the provisions of 11 U.S.C. § 1129(a), the Court having considered the arguments of counsel, the terms of the resolution of all Objections including those asserted by HSBC and Citi as set forth in Court as well as in their Objections on the record, and the Certificate filed with this Court evidencing the ballots duly and timely received by the Debtor pursuant to the Approval Order and the Plan; the Court having considered the Plan as well as the modifications to the Plan agreed to between the Debtor and Nationstar, the Debtor and MRS, the Debtor and Citi, and the Debtor and HSBC as set forth below and placed on the record at the Hearing, good cause having been demonstrated to the Court, and the Court having issued an interim Order on November 14, 2017 (the "Interim Order") [D.E. # 413] in which it ruled that the Debtor had demonstrated by testimony and an offer of proof all elements of 11 U.S.C. § 1129(a) at the Hearing except § 1129(a)(1) "insofar as the possibility that HSBC and Citibank should have been treated as impaired creditors rejecting the [P]lan", the Court having left that question open for either further briefing or, alternatively, permitting the Debtor to amend or modify the Plan in two respects as it relates to HSBC and Citi, the Debtor having decided to alter or modify the Plan as set forth in the Interim Order, and HSBC and Citi having consented to the language affecting their interests as set forth *infra*, the Court hereby makes the following findings of fact and conclusions of law, and enters the following orders:

2

### I.    MODIFICATIONS TO THE PLAN

Pursuant to agreement between the Debtor and Nationstar, as well as the Debtor and MRS, the Plan was modified in the following respects, and such modifications are hereby approved, such that the Plan, as modified in accordance with the following provisions, shall be deemed the "Modified Plan" as confirmed by this Confirmation Order:

**Nationstar**

Article IV, § 4.3 of the Plan is hereby amended by deleting said sections and replacing it with the following:

4.3    Class Three. Nationstar asserts Claims against the Debtor based on monies lent by Bank of America and those obligations are secured by a first-priority mortgage on State Street #2, which has a fair market value of **$85,000.00**. Nationstar shall be deemed to have an Allowed Secured Claim in that amount. The Debtor shall issue Nationstar a promissory note, in the total amount of such Allowed Secured Claim, such promissory note (the "Nationstar Note") to be payable in consecutive, equal monthly installments of principal and interest, based upon an amortization schedule calling for the payment of the Nationstar Note in full, together with all interest in three hundred and sixty (360) months at an interest rate of 4.0% *per annum*. The Nationstar Note shall issue on the Effective Date. Payments on the same shall commence pursuant to the terms of the Nationstar Note. Payments shall continue for a total of three hundred and sixty (360) monthly installments. The Nationstar Note shall be secured by the same collateral which secured the Class Three Claim on the Petition Date. The Debtor can, in his sole discretion, prepay the Nationstar Note at any time without penalty. Class Three is impaired and is entitled to vote on the merits of the Third Amended Plan.

**MRS**

The Modified Plan shall contain the following, new Article IX, § 9.21:

9.21    Tax Return Filing and Payment Obligations. The Debtor shall file his 2016 1040-ME, and pay all amounts due under that return, if any, on or before December 1, 2017. The Debtor's Chapter 11 estate shall file its 2016 1041-ME and pay all amount due under that return, if any, on or before December 1, 2017. For the avoidance of doubts, the phrase "all amounts due under" the 2016 1040-ME or the 2016 1041-ME, as applicable, shall include all amounts shown as due on the returns filed pursuant to this section, all amounts shown as due on amended returns filed with respect to returns filed pursuant to this section, and all finally assessed, audit-assessed liabilities on account of returns filed pursuant to this section. The Court shall not enter a Final Decree closing the case administratively until the tax reporting and tax payment obligations contemplated by this section are complied with in full.

**HSBC and Citi**

Article IV, § 4.4 of the Plan is hereby amended by deleting said section and replacing it with the following:

HSBC asserts Claims against the Debtor based on monies lent by True North Mortgage, LLC ("True North") and those obligations are secured by a first-priority mortgage on 52 Bramhall Street as set forth in HSBC's allowed proof of claim.  The Debtor has consented to relief from stay pursuant to 11 U.S.C. § 362(d) to allow HSBC to exercise its rights and remedies as to its collateral as set forth in the Bankruptcy Court's October 20, 2016 Agreed Order (and subject to the Debtor's right to contest any such efforts by HSBC under applicable law) [D.E. # 288].

HSBC shall have an Allowed Secured Claim in the amount of $575,142.73 as of the date of this Order per the Court's August 10, 2015, Order [D.E. # 199] and an Allowed General Unsecured Claim in an amount to be determined as set forth herein.  If HSBC liquidates its collateral during the term of this Plan by foreclosing its mortgage lien and selling such collateral, then HSBC's Secured Claim will be determined as set forth in Title 14 of M.R.S., § 6203.  In the event that the mortgagee is the purchaser at the public sale, any deficiency is limited to the difference between the fair market value of the premises at the time of the sale, as established by an independent appraisal, and the sum due the mortgagee with interest plus the expenses incurred in making the sale; in the event that the property is purchased by a third party, the sale price will become (the "Collateral Liquidation Amount"), and such Allowed Secured Claim shall be deemed satisfied in full and HSBC's Allowed Class Nine Claim shall be equal to the difference between $575,142.73 and the Collateral Liquidation Amount (the "Quantified HSBC Class Nine Claim").  Once the Quantified HSBC Class Nine Claim is calculated and the Debtor is notified thereof, HSBC shall, as to the same, share *pro rata* in any remaining distributions to holders of Allowed Class Nine Claims during the pendency of the Plan and the discharge to be granted to the Debtor pursuant to the Plan shall apply to the Quantified HSBC Class Nine Claim.  In no event shall HSBC be entitled to any portion of distributions to holders of Allowed Class Nine Claims prior to the time that the Debtor is notified of the Quantified HSBC Class Nine Claim.  The Notice of Sale sent to the Debtor at his last known address will constitute notice and HSBC will be entitled to distributions as of the date of the sale.

HSBC shall be deemed to have voted its resulting allowed Class Nine general Unsecured Claim in the favor of the Modified Plan.

Further, prior to and after plan confirmation the Debtor shall segregate all rental income generated from the HSBC's real property collateral from and after June 27, 2017 in a separate bank account opened for this property alone, and will directly deposit all rents into this account and will not use any of the rental income without either obtaining a court order or HSBC's written consent as set forth below at ¶ 4.

4

All other terms and conditions of the prepetition loan documents remain and survive in full force and effect.

Article IV, § 4.5 of the Plan is hereby amended by deleting said section and replacing it with the following:

Citi assets Claims against the Debtor based on monies lent by Bear Stearns Residential Mortgage Corporation ("Bear Stearns") and those obligations are secured by a first mortgage on 1 Crescent View as set forth in the Citi's allowed proof of claim. The Debtor has consented to relief from stay pursuant to 11 U.S.C. § 362(d) to allow Citi to exercise its rights and remedies as to its collateral as set forth in the Bankruptcy Court's October 20, 2016 Agreed Order (and subject to the Debtor's right to contest any such efforts by Citi under applicable law) [D.E. # 287].

Citi shall have an Allowed Secured Claim in the amount of $665,376.12 as of the date of this Order per the Court's August 10, 2015 Order [D.E. # 198] and an Allowed General Unsecured Claim in an amount to be determined as set forth herein. If Citi liquidates its collateral during the term of this Plan by foreclosing its mortgage lien and selling such collateral, then Citi's Secured Claim will be determined as set forth in Title 14 of M.R.S., Section 6203. In the event that the mortgagee is the purchaser at the public sale, any deficiency is limited to the difference between the fair market value of the premises at the time of the sale, as established by an independent appraisal, and the sum due the mortgagee with interest plus the expenses incurred in making the sale; in the event that the property is purchased by a third party the sale price will become (the "Collateral Liquidation Amount"), and such Allowed Secured Claim shall be deemed satisfied in full and Citi's Allowed Class Nine Claim shall be equal to the difference between $665,376.12 and the Collateral Liquidation Amount (the "Quantified Citi Class Nine Claim"). Once the Quantified Citi Class Nine Claim is calculated and the Debtor is notified thereof, Citi shall, as to the same, share *pro rata* in any remaining distributions to holders of Allowed Class Nine Claims during the pendency of the Plan and the discharge to be granted to the Debtor pursuant to the Plan shall apply to the Quantified Citi Class Nine Claim. In no event shall Citi be entitled to any portion of distributions to holders of Allowed Class Nine Claims prior to the time that the Debtor is notified of the Quantified Citi Class Nine Claim. The Notice of Sale sent to the Debtor at his last known address will constitute notice and Citi will be entitled to distributions as of the date of the sale.

Citi shall be deemed to have voted its resulting allowed Class Nine general Unsecured Claim in the favor of the Modified Plan.

Further, prior to and after plan confirmation the Debtor shall segregate all rental income generated from the Citi's real property collateral from and after June 27, 2017, in a separate bank account opened for this property alone, and will directly deposit all rents into this account and will not use any of the rental income without either obtaining a court order or Citi's written consent as set forth below at ¶ 4.

All other terms and conditions of the prepetition loan documents remain and survive in full force and effect.

## II. FINDINGS OF FACT

The Court hereby makes the following Findings of Fact in respect of the Modified Plan:

A. The Modified Plan complies with the applicable provisions of the Bankruptcy Code, including, without limitation, §§ 1121, 1122 and 1123 thereof.

B. The proponent of the Modified Plan has complied with the applicable provisions of the Bankruptcy Code.

C. The Modified Plan has been proposed in good faith and not by any means forbidden by law.

D. All payments made by or to be made by the Debtor for services or for costs and expenses in or in connection with the Case, or in connection with the Plan, as amended at the Hearing, and incident to the Case, have been approved by or are subject to the approval of the Bankruptcy Court as reasonable.

E. The Debtor, an individual, is not required to disclose the identity and affiliation of each individual proposed to serve, after confirmation of the Plan, as a manager, director or officer of the Debtor.

F. No regulatory approval is required to implement the Modified Plan.

G. The following classes are impaired under the Modified Plan and the holders of claims and/or interests, as the case may be, in such classes are entitled to vote for acceptance or rejection of the Plan: Classes Two, Three, Six, and Nine (collectively, the "Impaired Classes"). The remaining classes are unimpaired and, have accepted or deemed to have accepted the Modified Plan pursuant to Bankruptcy Code § 1126(f).

H.  Each acceptance and rejection of the Plan and the Modified Plan has been solicited and procured by Debtor in good faith and in accordance with the provisions of the Bankruptcy Code.

I.  Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Modified Plan provides that with respect to a Claim of a kind specified in Bankruptcy Code §§ 507(a)(1) through 507(8), on the Effective Date, that the holders of such claims will receive on account of such claim cash equal to the Allowed Amount of such claim or deferred cash payments as permitted by the Bankruptcy Code.

J.  All of the Impaired Classes have accepted the Plan, as determined without including any acceptance of the Plan by any insider.

K.  The Modified Plan does not provide for the liquidation of all or substantially all of the property of the estate.  Further, confirmation of the Modified Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor.

L.  The Modified Plan provides for the payment on the Effective Date of all fees payable under 28 U.S.C. § 1930 with respect to the Case.

M.  No retiree benefits, as that term is defined in Bankruptcy Code § 1114, are implicated by the Modified Plan.

N.  The Debtor is an individual.

O.  The value of the property to be distributed under the Modified Plan is not less than the projected disposable income of the Debtor (as defined in in 11 U.S.C. § 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Modified Plan, or during the period for which the Modified Plan provides payments, whichever is longer.

P.  The Debtor is not a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

### III. CONCLUSIONS OF LAW

A.  The Modified Plan complies with the applicable provisions of the Bankruptcy Code.

B.  The Debtor is not obligated to provide the continuation after the Effective Date of payment of any retiree benefits, as such term is defined in Bankruptcy Code § 1114(a).

C.  The Modified Plan does not discriminate unfairly and is fair and equitable as to those classes as required by Bankruptcy Code §§ 1129(b)(1) and (2).

D.  All discharges of indebtedness that occur in conjunction with the transactions contemplated in the Modified Plan (including, but not limited to, any that occur after substantial consummation of the case and prior to the Debtor's discharge pursuant to Bankruptcy Code § 1141(d)(5)) shall be deemed to be discharges "occur[ring] in a title 11 case" for purposes of 26 U.S.C. § 108(a)(1)(A).

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1.  The Modified Plan, shall be and hereby is confirmed. This Order shall be effective immediately notwithstanding Fed. R. Bankr. P. 3020(e).

2.  The Modified Plan and its provisions shall be binding upon (i) the Debtor; (ii) any entity acquiring or receiving property (including cash) under the Plan; (iii) any lessor or lessee of real or personal property to or from the Debtor; and (iv) any creditor of the Debtor, including, without limitation, any governmental unit, as such term is defined in Bankruptcy Code § 101(27), whether or not the Claim or Interest of such creditor or equity security holder is impaired under

the Modified Plan and whether or not such creditor, equity security holder or governmental unit has accepted the Plan.

3. In accordance with the relevant provisions of the Modified Plan, the Debtor is hereby authorized, without further Order of the Bankruptcy Court, to make all distributions and transfers of property required to be made under the Modified Plan. Except as otherwise expressly provided in Bankruptcy Code § 1141, the Modified Plan, or this Order, the consideration to be paid and/or delivered by the Debtor pursuant to the Modified Plan shall be paid and/or delivered, as the case may be, in full and final satisfaction, settlement, release, and discharge as against the Debtor of any and all legal and/or equitable Claims against and Interests in and to the Debtor, including, without limitation, any Claim or Interest that arose before the Confirmation Date, and any debt of a kind specified in Bankruptcy Code §§ 502(g), 502(h) or 502(i), whether or not (i) a proof of claim or interest is filed or deemed filed under Bankruptcy Code § 501; (ii) such claim or interest is allowed under Code § 502; or (iii) the holder of such claim or interest has accepted the Modified Plan.

4. Pursuant to Bankruptcy Code § 1141(b), all property of the Debtor's estate, except the Bramhall Street and Crescent View properties and the cash collateral generated therefrom, shall revest in the Debtor free and clear of all interests, liens, claims and encumbrances of any kind and nature whatsoever as of the date of this Order. Notwithstanding this provision, all cash collateral generated from the operation of the Bramhall Street and Crescent View properties from and after June 27, 2017, (the "Cash Collateral") shall remain in separate, segregated, accounts (one for HSBC on Bramhall and one for Citi on Crescent View) pending either (a) further Order of this Court or another Court of competent jurisdiction; or (b) written agreement of the parties.

5. HSBC, CITI and the Debtor shall bring any 11 U.S.C. § 506(c) surcharge motion as to the Cash Collateral collected between June 27, 2017, and the date of this Order on or before December 15, 2017, and the Court shall retain jurisdiction to adjudicate any such 11 U.S.C. § 506(c) surcharge motion before this case is closed.

6. After entry of this Order, all Encumbrances on the Debtors' assets that do not constitute Allowed Secured Claims and that are not preserved in accordance with the Modified Plan and this Order, are hereby nullified and voided and shall be of no force and effect. Any holder of such an Encumbrance shall forthwith, and without further order of this Court, cause the release and discharge of such Encumbrance in every public recording office in which evidence of such Encumbrance is recorded. In the event that any such holder fails and refuses to do so, then the Debtor may cause to be recorded a discharge of such Encumbrance in the name of such holder, and such discharge shall be effective as if executed and delivered by the holder.

7. Except as otherwise expressly provided in the Plan or this Order, all creditors and equity security holders of the Debtor whose Claims or Interests or whose rights and interests are impaired by the Modified Plan and/or this Confirmation Order, and all persons in concert or participation with them or any of them, are hereby restrained and enjoined from instituting or continuing any action, suit or proceeding, including without limitation, any administrative proceeding or arbitration or proceeding before any quasi-governmental entity, or employing any process to collect any Claims or pursue any Interests as liabilities or obligations of the Debtor, except as provided in the Modified Plan and this Order.

7.   This Court shall retain jurisdiction over the Case after the Effective Date for all of the purposes set forth in Article IX, § 9.14 of the Modified Plan and above at ¶ 4, provided, however, that the Court's retention of jurisdiction as provided in said Article IX, § 9.14 of the Modified Plan and this Order, shall be subject to the limitations that such jurisdiction shall not exceed the lawful jurisdiction of the Court pursuant to 28 U.S.C. § 1334 and shall comply with the provisions of D.Me. LBR 3020-1(a). In addition to the purposes described in the Modified Plan, the Court shall also retain jurisdiction to hear and determine any action or proceeding seeking to compel the Debtor to comply with its obligations under the Modified Plan.

8.   After the entry of this Order, the Debtor may modify the Modified Plan under Bankruptcy Code § 1127 and may remedy any defect or omission or reconcile any inconsistency in the Modified Plan or in this Order in such manner as may be necessary or appropriate to carry out the purposes and intent of the Modified Plan, so long as the interests of holders of Claims and Interests are not materially and adversely affected thereby. Any party-in-interest may object to any such modification that adversely affects its interest. Upon such objection, this Court shall determine if such modification is permissible.

9.   In the event of any conflict between the provisions of this Order and the provisions of the Modified Plan, the provisions of this Order shall prevail and take precedence over the provisions of the Modified Plan.

10.  For purposes of Bankruptcy Code § 1101(2), the Modified Plan shall be deemed to have been substantially consummated when all of the following conditions have been satisfied: (a) the Effective Date has occurred; (b) all documents required to be executed and delivered under and pursuant to the Modified Plan have been executed and delivered, including, without limitation, promissory notes and mortgages to be executed and delivered in favor of the Wilmington Savings

Fund Society, FSB, d/b/a Christiana Trust (the successor in interest to MCM PA), Nationstar, and BMW; and (c) and all requirements of 11 U.S.C. § 1101(2) have been satisfied, or the Court enters an order determining that the Modified Plan is substantially consummated upon a motion of any party in interest.  Except pursuant to further Order of this Court, the Modified Plan shall be substantially consummated on or before the expiration of one hundred and twenty (120) days from the date of entry of this Order.

11.    The Debtor shall comply with any and all post-confirmation reporting obligations required by the Office of United States Trustee.

12.    Any Administrative Claim for outstanding fees incurred in this case pursuant to 28 U.S.C. § 1930(a)(6) and due and payable as the Effective Date shall be paid in full on the Effective Date.  Thereafter, the Debtor shall pay any and all fees lawfully due under 28 U.S.C. § 1930(a)(6) with respect to this case in the ordinary course and without necessity of allowance by the Court until entry of an order closing the Case.

DATED:  December 18, 2017

_____
Hon. Melvin S. Hoffman
U.S. Bankruptcy Judge